VERNON SANFORD *et al.*

*v.*

GILBERT FINKLE.

*Filed at Ottawa November 17, 1884.*

1. DIVESTING OF LEGAL TITLE—*surrender and destruction of deed—equity of second grantee.* A husband, after having received a deed for a lot from his wife's parents, surrendered the deed to them for the purpose of having them convey the lot to his wife, and his deed was destroyed, it having never been recorded, and a new one made to his wife, in which he acquiesced

for seventeen years before suing for a deed: *Held,* that the surrender of his deed by the husband, and the making of one to his wife, did not divest his legal title, but passed an equitable title to his wife, which a court of equity would protect.

2. Settlement—*by husband upon wife—what amounts to a settlement.* Where a husband surrenders his deed for land to his grantors, to enable them to convey the same to his wife, which is done, and his deed destroyed, this will amount to a settlement by him upon her, in equity. It is an equitable gift that a court of equity will sustain.

3. Same—*consideration to support such a settlement.* Marriage is a sufficient consideration for a settlement upon a wife, and so is an existing marriage relation, if it in nowise affects the claims of existing creditors.

4. Adverse possession—*as between husband and wife.* Many years after a husband had surrendered to the grantors his deed for land, and had them convey to his wife, in which arrangement he acquiesced for seventeen years, he filed a bill to cancel the deed to his wife, and to compel the grantors to convey to him. His long possession was set up as affording a presumption of his ownership, and as giving ground to have his wife's deed set aside as a cloud on his title: *Held,* that as his possession was not adverse to the wife, it could not avail, and that she, residing with him all the time, was in possession to the same extent that he was.

5. Ratification—*by acquiescence in act done.* Where a deed to a man after delivery is left by him with the grantors, and they destroy the same and make another to his wife, the fact that he acquiesces in the same for over seventeen years, and makes no complaint until after a family dissension arose, affords evidence of his ratification of the arrangement.

6. Homestead—*of husband and wife in each other's property.* A husband has an unquestioned legal right to live with his wife and enjoy property by him settled upon her as a homestead, as fully as if the title was in himself. So has the wife the same rights of homestead in property of which he has the legal title.

Appeal from the Circuit Court of Whiteside county; the Hon. John V. Eustace, Judge, presiding.

Mr. Wm. Barge, and Mr. John D. Campbell, for the appellants:

The surrender of the deed by the grantee, and its cancellation, and the making of a new deed by the grantor to the wife of the first grantee, by his consent and direction, vested the equitable title in the wife. *Commonwealth* v. *Dudley,* 10

Mass. 402; *Holbrook* v. *Tirrell*, 9 Pick. 104; *Lawrence* v. *Stratton*, 6 Cush. 165; *Barrett* v. *Thorndike*, 1 Greenlf. 73; *Patterson* v. *Yeaton*, 47 Maine, 308; *Thompson* v. *Ward*, 1 N. H. 9.

The re-delivery by the grantee, to his grantor, of an unrecorded deed, with the intention and for the express purpose of having the same cancelled, and of re-vesting the title in the grantor, re-vests the title accordingly. *Dodge* v. *Dodge*, 33 N. H. 487; *Bank* v. *Eastman*, 44 id. 438; *Farrar* v. *Farrar*, 4 id. 191; *Mussey* v. *Holt*, 4 Foster, 248; *Howard* v. *Huffman*, 3 Head, 564; *Nason* v. *Grant*, 8 Shepley, 160; *Wiley* v. *Christ*, 4 Watts, 199; Browne on Statute of Frauds, sec. 60; 2 Wharton on Evidence, sec. 861; *Mallory* v. *Stoddard*, 6 Ala. 801; *Thompson* v. *Thompson*, 9 Ind. 323; *Dukes* v. *Spangler*, 35 Ohio St. 119.

Many cases hold that a grantee who voluntarily consents to the destruction of his deed shall not have affirmative relief under it. *Dukes* v. *Spangler*, 35 Ohio St. 119; 2 Wait's Actions and Defences, 510; 3 Washburn on Real Prop. (4th ed.) 305. This is based on an estoppel. *Farrar* v. *Farrar*, 4 N. H. 191; *Trull* v. *Skinner*, 17 Pick. 213.

This case is not within the Statute of Frauds, because the contract was at least partially executed. *Wiley* v. *Christ*, 4 Watts, 199.

A specific performance of a parol contract for the sale of land may be decreed, notwithstanding the Statute of Frauds, where the consideration has been paid and possession taken. *Ramsey* v. *Liston*, 25 Ill. 114; *McDowell* v. *Lucas*, 97 id. 489; *Bright* v. *Bright*, 41 id. 97; *Bonhannon* v. *Bonhannon*, 96 id. 591; Browne on Statute of Frauds, sec. 60.

The possession of the husband, after the destruction of his deed and a conveyance to his wife, was not adverse. *Commonwealth* v. *Dudley*, 10 Mass. 406.

Mr. C. L. Sheldon, and Mr. C. J. Johnson, for the appellee :

Many of the cases cited by appellants are where the grantee sold the premises to a third person for value, and he is therefore estopped. Such are *Commonwealth* v. *Dudley,* 10 Mass. 406, *Holbrook* v. *Tirrell,* 9 Pick. 104, *Lawrence* v. *Stratton,* 6 Cush. 165, and 1 Greenlf. 73. *Patterson* v. *Yeaton,* 47 Maine, 308, was where the first grantee surrendered an unrecorded deed to the grantor, and the property was then sold to a third person without notice of the prior deed.

At common law, the cancellation of a deed by consent of parties will not divest the grantee, or invest the grantor with an estate that has once vested. *Wilson* v. *Hill,* 13 N. J. Eq. 143; *Fonder* v. *Sage,* 46 Barb. 000; *Parker* v. *Kane,* 4 Wis. 30; *Hinchcliff* v. *Herrman,* 18 id. 130; *Wilkie* v. *Wilkie,* 28 id. 296; *Hilmert* v. *Christian,* 29 id. 104; *Bogie* v. *Bogie,* 35 id. 659; *Hentch* v. *Hentch,* 9 Mass. 307; *Souverby* v. *Arden,* 1 Johns. Ch. 240; *Nicholson* v. *Halsey,* id. 417; *Jackson* v. *Page,* 4 Wend. 417; *Jackson* v. *Anderson,* id. 585; *Kellogg* v. *Rand,* 11 Paige, 59; *Ruyner* v. *Hilson,* 6 Hill, 469; *Kimball* v. *Grey,* 47 Ala. 230; *Dukes* v. *Spangler,* 35 Ohio St. 119; *Jeffers* v. *Philo,* id. 173; *Starr* v. *Starr,* 1 id. 321.

Twenty years' possession and payment of taxes make a perfect title. *Weber* v. *Anderson,* 73 Ill. 440; *Kerr* v. *Hitt,* 75 id. 59; *Hale* v. *Gladfelder,* 52 id. 94; *Childs* v. *Davis,* 58 id. 411. And one holding under such a title may come into court to remove the record title. *Hinchman* v. *Whetstone,* 23 Ill. 185; *Rawson* v. *Fox,* 65 id. 206; 1 Story's Eq. Jur. (12th ed.) 685, note; *Arrington* v. *Liscomb,* 34 Cal. 365; *Marston* v. *Rowe,* 39 Ala. 722; *Moody* v. *Holcomb,* 26 Texas, 714.

There being neither fraud nor injury in this case, there can be no estoppel. *Flower* v. *Elwood,* 66 Ill. 438; *People* v. *Brown,* 67 id. 435; *Davidson* v. *Young,* 38 id. 135; *Dorlarque* v. *Cress,* 71 id. 380; *Chandler* v. *White,* 84 id. 435.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Some time in 1860, appellants, Sanford and wife, conveyed to appellee, Finkle, who was their son-in-law, a lot in San-fordville. Finkle claims he purchased the lot, and paid a consideration of two dollars for it; but the grantors contend it was conveyed as a gift. The grantee took immediate possession, and improved the property, and he and his family have occupied it as a home ever since. The deed conveying the lot was never recorded. In the early part of 1864, Finkle went to Idaho, leaving his family behind, and did not return till the fall of that year. The deed was taken by Sanford and wife, on the 29th of February of that year, to one Lucky, a notary public, and it was destroyed, and they executed a deed for the same land to Nancy Finkle, their daughter, and the wife of complainant, which latter deed was duly recorded. On the 14th day of April, 1881, Finkle filed this bill to have the deed to his wife cancelled, and to have a deed made by Sanford and his wife to himself, for the land in controversy. He alleges that in his absence Sanford and wife obtained the deed, had it destroyed, and conveyed the land to his wife, without his knowledge or consent. This they deny, and claim that in view of his trip to Idaho he voluntarily brought and delivered the deed to them, with the request that they should take it to Lucky and have a deed prepared to Mrs. Finkle, and that they execute it, and destroy their deed to him. On a hearing, on the bill, answers, replications and proofs, the circuit court decreed the relief prayed by the bill, and San-ford and wife perfected an appeal to this court, and assigned as error the granting of the prayer of the bill.

A careful examination of the evidence convinces us that appellee did deliver or return the deed to appellants, and they destroyed it, and conveyed the land to Mrs. Finkle, and in doing so they acted under his directions. The evidence is irreconcilably conflicting, but we think that it preponderates

in favor of the defence. Where the title is vested by deed in a person claiming under it, the court never disturbs the title unless it clearly and satisfactorily appears that another is entitled in equity to the land. In the conflict in the evidence it can not be said that appellee has clearly established his theory of the case, but, on the contrary, the evidence, we think, preponderates against him.

The weight of the evidence, then, establishing the fact that appellee did surrender the deed to appellants, and that the deed to his wife was made under his directions, would not divest his legal title; but the question arises whether it did not vest the equitable title in his wife, so that he is precluded from claiming the equitable title. In chancery an equitable title may be set up as a complete defence against a legal title. Does, then, his wife, by the arrangement, hold such an equitable title? If so, a court of equity will not interfere to divest her of that title or of her apparent legal title.

It is urged that there was no consideration to support the arrangement. This is manifestly a misconception. It has ever been held that marriage is a sufficient consideration for a settlement on a wife, as against all but existing liens. And it is equally well settled that an existing marriage relation is a sufficient consideration to support a settlement by a husband on his wife, if it in nowise affects the claims of existing creditors. All such settlements are sustained, both at law and in equity. This is especially true where the settlement is consummated. After the arrangement has been carried into execution, a court of chancery will not aid the donor, when he changes his mind, to resume the title to the property thus settled. In such cases it will not afford him relief. This was such a settlement, in equity. Although appellee may be invested with the legal title to the property, it is an equitable gift made at his own request and under his directions, and equity is required to sustain it. Had his wife

filed a cross-bill, she would have had the right to a decree for
a deed from him releasing his legal title to her.

But it is urged that appellee's long possession gave him the
right to hold the land as against his wife; that it amounted
to a bar of the Statute of Limitations, and after such a length
of possession he must be presumed to be the owner, and that
the deed to his wife should be cancelled as a cloud on his
title, and appellants should be compelled to convey to him,
so as to clothe him with the evidence of ownership. The
objection to this proposition is, that his possession was not
adverse to his wife. She was in possession to the same ex-
tent as he was, and was in possession under the deed from
her parents, which was delivered to and received by her soon
after its execution. She is, in every respect, as fully entitled
to invoke long and actual possession as he is. In this respect
he has no advantage. If time may be relied on to bar the
relief, she may insist on his *laches* in delaying the exhibiting
of his bill. He admits that he knew the conveyance had
been made to her some seventeen years before filing his bill.
This, under the facts of the case, is strong evidence that he
acquiesced in her claim and ownership. But to break the
force of this presumption he says that he did not know that
the deed conveying the property to him had been destroyed.
He knew that appellants had conveyed to his wife, and seems
to have been so well satisfied with the arrangement that he
took no steps to learn the true condition of his title for about
seventeen years, and not then until friendly relations ceased
between him and his mother-in-law. After such acquiescence,
unexplained, we are justified in believing that he acquiesced
in the arrangement, and intended it to have full effect, until
friendly relations were broken off between him and Mrs. San-
ford, and he then became dissatisfied, and determined to
reclaim the title, if he could recover the title by legal pro-
ceedings.

It is urged that to sustain this arrangement would be violative of the Homestead law,—that it requires all releases or waivers of its provisions to be in writing, and executed according to its specific requirements, which was not done in this case. There was no release of the homestead, or right to enjoy the property as such. Appellee has the legal and unquestioned right to live with his wife, and to occupy the premises as a homestead as fully as if the title was in him. It then follows, that he did not release his right to occupy it jointly with his wife as a homestead. Were the title vested in him, she would have the same right to homestead in his property as he has in hers. There is no force in this position.

A large number of authorities have been cited on both sides, but we refrain from reviewing them, because all the cases are unlike this in their essential features. Here, appellee attempted to place the legal title in his wife as a settlement. Having failed in that, he did undeniably vest her with an equitable title, which will be sustained and protected.

It is urged that Mrs. Finkle has not appealed, and appellants can not urge error in the decree against her. As we understand it, they do not urge errors committed against her, but against themselves. Appellee filed his bill against them for the purpose of compelling them to convey the land to him, and the court decreed that they should, and to reverse that decree they appeal. But failing to obtain the relief sought against appellants, his decree for the cancellation of the deed to his wife does not give him the desired relief, and it must therefore fail with the refusal of relief against appellants.

The decree of the court below is reversed, and the cause remanded, with directions to the circuit court to dismiss the bill.

*Decree reversed.*