KIRSHMAN *v.* JACKSON.

1. DEEDS—DESTRUCTION—TITLE.

   Destruction of absolute deeds of which proper delivery has been made is insufficient to revest title to its original status.

2. SAME—UNCONDITIONAL DELIVERY — EVIDENCE — HUSBAND AND WIFE.

   In suit by children against their late father's wife by subsequent marriage to establish title to home in their father and defendant as tenants in common at time of his death, finding of trial court that deeds from husband and wife, holding as tenants by the entireties, to third party and from latter to husband and wife, as tenants in common, were delivered unconditionally, though later destroyed, *held,* supported by evidence, the question being largely one of credibility of witnesses.

Appeal from Allegan; Miles (Fred T.), J. Submitted April 10, 1936. (Docket No. 70, Calendar No. 38,854.) Decided June 11, 1936.

Bill by Mildred Kirshman and others against Nora Jackson to compel delivery of a deed, for a partition and other relief. Decree for plaintiffs. Defendant appeals. Affirmed.

*George B. Gould,* for plaintiffs.

*I. C. Montague* and *Harry Pell,* for defendant.

BUTZEL, J. John Wesley Jackson and Nora Jackson, his wife, defendant and appellant herein, owned their home in Allegan, Michigan, by the entireties. Plaintiffs herein are Jackson's children by a former marriage. On June 14, 1930, Mrs. Jackson became

seriously ill and an operation was imminent. She had no children but did have a sister and other relatives who she desired to care for in the event of her death. She insisted that before going to the hospital the title to the home be placed in herself and husband as tenants in common instead of by the entireties so that in the event of her death, the entire property would not go to her husband as survivor, but a one-half interest would go to her estate. George Wise, a scrivener, was called to the Jackson home in the morning and in the afternoon he returned with deeds duly prepared. Mr. and Mrs. Jackson signed a deed vesting title in Mrs. Hartzel Jackson, a daughter-in-law of Mr. Jackson, and she in turn executed a deed to her grantors as tenants in common. She states that she was only used as a medium to change the type of tenancy and she makes no claim to any interest in the property. The main issue, one of fact, is whether the deeds were executed and delivered on the condition that they only become effective in the event that Mrs. Jackson did not recover from her illness. The deeds were entrusted to the scrivener and later, it is claimed, destroyed. Some six months later, Mr. Jackson made a will leaving the property in question, the household furniture and $500 to his wife and all his other property to his children. Upon the death of her husband, defendant elected to take under the statute, claiming that the deeds never became effective but were destroyed in accordance with the understanding, and that therefore she is entitled to the property as survivor and also her share in the remaining assets of the estate under the statute. Plaintiffs in the instant suit seek to establish the tenancy in common.

If the deeds were absolute and proper delivery made, their subsequent destruction would not be

sufficient to revest the title to its original status. *Tabor* v. *Tabor,* 136 Mich. 255; *Detroit & Security Trust Co.* v. *Gitre,* 254 Mich. 66, 70. Hartzel Jackson testified that she gave her deed upon its execution to her father-in-law who handed it over to Mrs. Jackson; that she was present when both the deeds were executed and delivered; that she was called over to the home in the morning in order to help defendant get ready to go to the hospital and defendant told her that Mr. Wise was coming to make a deed because she was not going to the hospital until it was finished; that Mr. Jackson had asked Mrs. Jackson to forget the matter because she was so very ill and assured her that if anything happened, her people would get "what was what;" that Mrs. Jackson made the remark a couple of times, at least, that she had lost out more than once because of just some error and she positively was going to know this morning that things were as she wanted them, before she left, regardless of her health, and that is why this deed was made. Hartzel Jackson stated further that she was in the immediate vicinity of the parties in the afternoon when Wise claims that the instructions to him were repeated, and that she heard no conversation relative to Mr. Wise holding the papers in escrow or that in case defendant should survive the operation, he should destroy the deeds. Mr. Wise, on the other hand, stated that in the morning he was called over to draft the deeds for the purpose of protecting Mrs. Jackson's estate in case anything happened to her during her illness; that when the deeds were signed in the afternoon they were given to him with the instructions and understanding that he was to put them in his safe and if Mrs. Jackson died, to record them, but otherwise to destroy them if she recovered from her illness. He stated that he had

known Mrs. Jackson 25 years; that they worked at the same place and they had been quite closely associated for many years. He stated that he kept the deeds in his safe and subsequently they were torn up by defendant in the presence of Mr. Jackson. The testimony of Walter Jackson was to the effect that he was present when Mr. Jackson's safety deposit box was opened up by Mrs. Jackson after his death, and when she came to a certain envelope, she stated that it was the deed to the home and that it was not listed with the other papers. We attach no significance to this latter testimony as it might have been the original deed to the home vesting the property by the entireties. The trial judge held that the deeds that vested title in Hartzel Jackson and in turn in Mr. and Mrs. Jackson as tenants in common were delivered unconditionally. While the case is not free from considerable doubt, it resolves itself largely into the question of the credibility of the witnesses. The trial judge evidently believed the testimony of Hartzel Jackson, which is quite convincing, that she was in the immediate vicinity of all the parties the entire time during the transaction in the afternoon, and that there was nothing said which would indicate other than that the Jacksons wanted the title to the property to be placed unconditionally and irrevocably in the names of both defendant and her husband as tenants in common.

The fact that almost six months after defendant recovered from the operation, her husband made a will leaving the property to her is some indication that he believed he still had an interest in the property that would survive after his death. While this is not conclusive, it tends to support plaintiffs' claims. Although it is true that he was only a layman, nevertheless the previous transaction naturally

might have acquainted him with the fact that if the property were still owned by the entireties, he would have no interest in it to leave by will.

The court rendered a decree holding there was proper execution and unconditional delivery of the deeds. The decree is affirmed, with costs to plaintiffs.

North, C. J., and Fead, Wiest, Bushnell, Edward M. Sharpe, and Toy, JJ., concurred. Potter, J., took no part in this decision.