WILLIAM M. STANLEY ET AL. v. B. H. EPPERSON.

1. CONTINUANCE.—The overruling of an application for continuance which fails to comply with the requirements of the statute will afford no ground for a reversal, unless it manifestly appears, from the affi-

davit or from the facts developed during the progress of the case, that the testimony was material for the attainment of the ends of justice.

2. TRESPASS TO TRY TITLE—EVIDENCE.—In trespass to try title the plaintiff is not required to give the defendant notice of the source from which he claims title; and if he gives the defendant notice of the loss of a particular deed, or of the filing of a deed or of a certified copy thereof, to be used in the evidence, he is not thereby estopped from showing title in some other way.

3. DEED—ERASURE.—An erasure or alteration in a deed, after delivery, whether recorded or not, does not reinvest the title in the grantor or abrogate or annul the title of the grantee.

4. COMMUNITY PROPERTY—PRESUMPTION.—Property conveyed by deed to the wife, pending marriage, is presumed to be community property in the absence of evidence that it was paid for out of the separate estate of the wife.

5. DEED—ESTOPPEL.—A defendant, in trespass to try title, who, after selling the land in controversy to a third party, had acquiesced and consented to the erasure of the name of his vendee from the deed which he had made, and the insertion of the plaintiff's name therein, after a purchase and payment therefor by the plaintiff, is estopped from denying the title of the plaintiff.

APPEAL from Red River. Tried below before the Hon. John D. Easton.

Suit instituted by Epperson, appellee, against W. M. and F. M. Stanley, to recover a tract of land described in the petition. The action was trespass to try title, in the usual form. W. M. Stanley answered, but F. M. Stanley, though served, filed no answer. Sarah Stanley, the wife of W. M. Stanley, filed a petition, praying to be made a party to the suit, and set up that she was the wife of W. M. Stanley, and that the land was her homestead, and pleaded (though not under oath) *non est factum* to a deed filed with the papers as the basis of plaintiff's title.

On the trial the following were the facts adduced in evidence: Plaintiff offered in evidence a deed from William M. Stanley and wife for the land described in plaintiff's petition. The deed was in the usual form of warrantee, and described the land sued for.

Donahue, a witness for plaintiff, was introduced, and tes-
tified as follows: That he was acquainted with the land de-
scribed in plaintiff's petition and identified the same, and
that William M. Stanley and wife were living upon the land
at the time of the institution of this suit. Plaintiff then
closed.

Defendant then introduced John A. Bagby, who testified
that he was District Court clerk of Red River county, Texas,
and was county clerk of said county in 1867 and up to the
time he was elected district clerk under the present Consti-
tution; that he was county clerk of said county at the time
the acknowledgment to the deed was taken; that it was ac-
knowledged before him by William M. Stanley, and that his
official signature and seal of office attached to said deed was
genuine and was put there by him; that at the time of tak-
ing the acknowledgment and making the certificate the name
of Mattie P. Henderson was on the deed as grantee; that
after taking the acknowledgment the same was left with him.
He could not say whether he was instructed to record the
deed, but such was his usual custom; that before said deed
was recorded John D. Henderson and William M. Stanley
came to him and got the deed, and that he went with them
to plaintiff, B. H. Epperson, when the name of Mattie P.
Henderson was erased from the deed as grantee, and that of
B. H. Epperson inserted in its stead; that this was done in
the presence of John D. Henderson, W. M. Stanley, and
plaintiff; that he did not recollect whether William M.
Stanley assented to the change or not, but knew that no ob-
jection was made; that after the change in the deed it was
delivered to him in presence of said parties, to wit, J. D.
Henderson, William M. Stanley, and B. H. Epperson, to be
filed as recorded; that neither Sarah A. Stanley, wife of Wil-
liam M. Stanley, nor Mattie P. Henderson, wife of John D.
Henderson, were present when the deed was altered and de-
livered; that witness did not know whether they consented
to it or not. Witness also stated that he never took Mrs.

Stanley's acknowledgment to any deed to B. H. Epperson. Here defendant closed.

Plaintiff then introduced one Sims, a witness in rebuttal, who testified that he was present at the time of the alteration of the deed; that John D. Henderson, William M. Stanley, plaintiff, B. H. Epperson, and John A. Bagby were also present, but that neither Mrs. Henderson nor Mrs. Stanley were present; that the alteration was made with the assent of John D. Henderson and the approval of William M. Stanley, and that after the alteration the deed was delivered to John A. Bagby, in their presence, to be recorded. This took place at B. H. Epperson's office, and he (the witness) was present at the request of John D. Henderson, who had consulted him about the transaction; that the transaction took place publicly and openly.

Plaintiff B. H. Epperson was then called, and testified in his own behalf as follows: that John D. Henderson was the husband of Mattie P. Henderson, who was, at the time of the alteration of the deed, in the State of Missouri, and had been there for several months previous, and so continued until after the death of her husband, which occurred in September following; that he (plaintiff) purchased the land in controversy from John D. Henderson, the husband of the said Mattie, and paid him $4,200 for it; that when Henderson met him by appointment to make a conveyance of the land, he (Henderson) showed him a deed from Stanley and wife to Mattie P. Henderson, and, when his attention was called to this fact, stated that he had brought William M. Stanley with him to make a new deed, as this one had not been recorded, and asserted that he had paid for the land himself, and not with the separate funds of his wife. William M. Stanley was present, assenting to what he said, and admitted that he had received full payment for the land, and stated that he was willing to make a deed to any one Henderson should designate, whereupon, with the assent of John D. Henderson and William M. Stanley, the name of Mattie P. Henderson, wher-

ever it occurred as grantee in the deed, was erased, and the name of plaintiff was substituted, and that the deed was then stamped and delivered, in the presence of said J. D. Henderson and said William M. Stanley, to John A. Bagby, clerk of the County Court, with a request that it be recorded; that William M. Stanley stated that he was occupying the place as a tenant of John D. Henderson for the current year of 1868, and Henderson admitted that he had been paid rent for that year, and that Stanley was to remain in possession as tenant until the end of that year; that after this transaction, and after the death of John D. Henderson, which occurred in September following, but before the end of the year, William M. Stanley proposed to rent the premises of plaintiff for the next year, which plaintiff declined; that soon after this conversation concerning the rent, plaintiff left the State, and was gone for about a year; when he returned, William M. Stanley claimed title to the land; that the deed was altered upon the day it was marked filed, and that the consideration paid by plaintiff to John D. Henderson for the land was $4,200. Neither Sarah A. Stanley nor Mattie P. Henderson was present at the time the deed was altered; witness did not know whether either of them consented to the alteration or not. Epperson was asked by defendant if he had not seen a deed upon record for this land from Mrs. Mattie P. Henderson, made after the death of her husband, to William M. Stanley and wife. He replied he did not recollect positively whether he had or not; he might have heard there was such a deed, but did not recollect to have seen a record of it.

The first cause of error assigned by appellant for reversal was the refusal of the court below to grant his motion for a continuance upon account of the absence of a witness. The case had been pending nearly three years. An application for a continuance was made on account of the absence of L. D. Henderson, who was not a resident of the county. The affidavit stated that L. D. Henderson was a material witness; that he had been regularly subpœnaed, and that he had been

a citizen of Red River county until recently; "that he is now a citizen of Grayson county; that he has important business in this court, and is looked for hourly, and that defendant believes he can procure his testimony by next court." But the application did not show when he was subpœnaed. It did not state whether he had been subpœnaed whilst residing in Red River county or since he had moved to Grayson. It stated that he had been a citizen of Red River county "until recently," but did not explain what was meant by "recently." It also failed to state defendant had used due diligence to procure his testimony.

*James H. Clark,* for appellants.—If the policy of the law did not forbid such tampering with muniments of title, it still would have been necessary for Mrs. Stanley to have ratified and acknowledged the deed, after the alteration, to give it validity. (26 Tex., 745; 30 Tex., 770; 29 Tex., 133; 25 Tex., 157; 25 Tex. Supp., 113; 4 Tex., 62; 8 Humph., 556; 11 Humph., 472; 6 McLean, 200; 3 J. J. Marsh., 242; 6 Dana, 390; 8 B. Monr., 178; 19 N. H., 348; 6 Ham., (Ohio,) 314; 9 Serg. & R., 268; 3 H. & McHenry, 430; 8 Cowen, 75; Coke Litt., 225b, n. 136; 9 Mass., 307; 10 Pick., 105; 4 Wend., 475–585; 4 Bac. Abr., 212; 20 Tex., 393; 2 Story Eq., 1204; 16 Tex., 323; 24 Tex., 308.)

Does the law warrant the introduction of testimony other and different from that of which the party has given notice by his pleadings?

The object of all pleading, under every system, is to give the opposite party notice of the issue he will be called on to meet. Our action of trespass is no exception to this rule. Our laws of registry, and the statutory requirement of filing the title papers with the clerk and giving three days' notice, supplement the pleadings, and give the opposite party the necessary notice. In this case the notice was given defendants; a certified transcript of the records was filed with the papers of the case and affidavit of the loss of the original.

Defendants tendered issue by a special answer, denying the execution of the deed. That issue was accepted by plaintiff, and upon that he went to trial. And it is submitted that that is the only issue shown by the pleadings. If plaintiff did not wish to accept this issue, and did not intend to abide it, he should have confessed, and plead specially the matter of avoidance. As he did not, the law compels him to abide the result of this. (7 Tex., 338; 11 Tex., 662; 17 Tex., 46.)

*Epperson & Maxey*, for appellee.—In this case the grantor is trying to avoid a deed made by himself, and to do so upon extreme technical grounds. Neither law nor common sense will permit this. His position assumes that the alteration or change of his original deed, though made with his consent and concurrence, and without fraud, nevertheless reinvested him with the title he professed to convey.

Consent of the obligor.to an alteration given before or at the time of the alteration will be considered as a re-execution. (Cleaton *v.* Chambliss, 6 Rand., (Va.,) 86.) Alterations, though material, do not invalidate it, if made with the consent of the parties. (Boardman *v.* Gore, 1 Stew., (Ala.,) 517; Wooley *v.* Constant, 4 Johns., (N. Y.,) 54; S. P. Kerwin's case, 8 Cow., (N. Y.,) 118.)

The alteration of an instrument, made by consent of parties, does not affect its validity. (Ravisies *v.* Alston, 5 Ala., 297; Stewart *v.* Preston, 1 Fla., 10; Wickes *v.* Caulk, 5 Har. & J., (Md.,) 36; Boston *v.* Benson, 12 Cush., (Mass.,) 61; Wright *v.* Wright, 2 Hals., 175; 2 Green, 533; Lewis *v.* Payn, 8 Cow., (N. Y.,) 71.)

MOORE, ASSOCIATE JUSTICE.—The court did not err in overruling appellants' application for a continuation, or if so, appellants have failed to incorporate in the transcript the facts showing such error. The affidavit is not in compliance with the statute. There is no averment in it that due diligence had been used to procure the testimony of the absent witness,

nor are any acts of diligence shown from which the court could see that diligence had been used as is plainly required by the statute. Nor does the record aid the meager averments of the affidavit. If the subpœna, alleged to have been served upon the witness, was returned, no notice is taken of it in the bill of exceptions, nor is it copied in the transcript. Unless appellants had brought themselves within the provisions of the statute, they cannot, therefore, complain unless it manifestly appeared from their affidavit or from the facts developed during the progress of the trial that the testimony was material for a proper trial of the case and the attainment of the ends of justice. (Chilson v. Reeves, 29 Tex., 275.)

The second error assigned is the overruling of appellants' objection to the introduction of evidence to prove a purchase by appellee of the land sued for from Mrs. Mattie P. Henderson. The ground of this objection is, that appellants had no notice, by pleading or otherwise, that appellee claimed to have purchased the land from Mrs. Henderson while they had notice that he claimed to have otherwise acquired it.

An inspection of the transcript shows, that no such evidence was offered or relied upon by appellee as that to which it is said in the assignment of errors and bill of exceptions objection was made. Appellee did not claim or attempt to prove a purchase of the land from Mrs. Henderson, but from her husband, John D. Henderson. But if we consider the objections as made to the evidence offered to establish the title in fact relied upon, it is wholly untenable, and has no support from anything found in the record. Appellee's petition is in the usual form in the statutory action of trespass to try title. He does not attempt to deraign his title in the petition, nor did he give any notice whatever of the source from which he claimed to have derived it, or of the evidence on which he relied to establish it, so far as can be seen in the transcript, until developed in the trial before the jury. The only thing in the record giving the slightest color of support to the objection, is an affidavit by appellee to the effect, that

he could not procure the original deed from appellants, William M. Stanley and S. A. Stanley, to appellee; that it had been filed by him for record, but after diligent search it could not be found, &c. But if it was appellee's intention to rely upon this deed, or a certified copy of it, the record fails to show that notice of the fact was given appellants. If, however, such notice was given, it gave appellants no ground of complaint, for it appears from the statement of facts that this deed is in support of appellee's claim of title by purchase from Henderson. But if it was not, is there the slightest authority for holding that the plaintiff in an action of this kind must give the defendant notice of the source from which he claims his title; or if he gives notice of the loss of a particular deed, or of the filing of a deed or certified copy of it to be used as evidence in the case, (Paschal's Dig., art. 3716,) that he is estopped from showing title in some other way?

If there were other grounds of objection to appellee's evidence, they were not made, and it would be now too late to consider them, if pointed out.

The third error assigned is the refusal of the court to give the special charges asked by appellants. It would be an unnecessary consumption of time to comment upon and point out the specific objections to each one of these ten charges. It will suffice to say that it manifestly appears the refusal of them by the court gives appellant no just ground of complaint. They are, all of them, palpably erroneous and unsound, or altogether inapplicable to the evidence.

The objection to the charges given by the court is assigned as the fourth ground of error. Some of these charges may not be in all respects strictly accurate. But in view of the facts to which they refer, there seems to be nothing in them calculated to do appellants injustice, or of which they have any just ground to complain. The issue upon which the case, as developed by the evidence, should be determined is fairly and substantially presented to the jury. The facts to be established by appellee to entitle him to a verdict were

brought clearly and distinctly to their attention. The legal propositions embodied in the charge seem to be fully supported by authority, and, in connection with the evidence set out in the statement of facts, fully warrants and sustains the verdict.

The action, as has been said, is one of trespass to try title, brought by appellee against William M. Stanley and F. M. Stanley, the latter of whom did not appear; and, while the former filed answers of general denial and "not guilty," he seems on the trial to have made no defense on his own behalf. During the progress of the case, however, his wife, S. A. Stanley, asked to make herself a defendant, alleging that a part of the land sued for was her homestead; and subsequently she seems to have held the position of the leading defendant.

As no objection was made to Mrs. Stanley becoming a party for the purpose of asserting her alleged homestead rights, it is unnecessary for us to consider whether she was a proper party to the suit or not, or whether the homestead rights of the family might not have been just as well, if not more properly, asserted by the husband, as the head of the family. It certainly has not been the practice in suits of this kind, when the family are residing upon the land sued for, to make the wife a party.

Although Mrs. Stanley asked to make herself a party solely for the purpose of protecting her homestead, it is evident from the facts asserted by her that she can make no pretense that either she or her husband can justly claim that they or either of them are entitled to a homestead on the land or have a right to hold it under such a claim. It is not disputed that Stanley sold the land to Henderson, and that he and his wife executed and delivered a valid deed for it to Mr. Henderson. It is perfectly well settled that an erasure or alteration of a deed after delivery, whether recorded or not, does not reinvest the title in the grantor or abrogate or annul the title of the grantee. (Herrick *v.* Malin, 22 Wend.,

388; Morgan *v.* Elam, 4 Yerg., 375.) How, then, can either Stanley or Mrs. Stanley have or assert any claim or interest in or to it? (Shelton *v.* Deering, 10 B. Monr., 405.) Whatever may be the effect of the erasure of Mrs. Henderson's name from the deed and inserting appellee's, it gave neither Stanley nor wife any title. When they conveyed the land to Mrs. Henderson it ceased to be their homestead, if it had been so previously, of which, however, there is no proof in the record. Though they were living upon the land when appellee bought it, the proof shows that it was, as Henderson's tenants. The question in the case, then, is not whether appellants can claim the land as their homestead, but whether appellee has shown such title in himself as will support the judgment.

It is not shown that the land was paid for, out of the separate estate of Mrs. Henderson; consequently, although the deed was made to her, the land must be held to have been community property. Henderson could therefore sell it without his wife being a party to such sale. The testimony in the record is certainly amply sufficient to justify the jury in the conclusion that Henderson did so sell the land to appellee; that to effectuate this sale at the instance of Henderson, and with the knowledge and approval of Stanley, Mrs. Henderson's name was erased and appellee's inserted in the deed from Stanley and wife to Mrs. Henderson, all the parties at the time supposing that the land could be thus conveyed to appellee, and appellee, on the faith of it, paying Henderson a full and fair consideration for it. While it is true the altered deed of itself cannot be held to be either the deed of Stanley and wife to Epperson, or a deed from Henderson to him, yet the facts show that it would operate as a fraud upon appellee to permit Henderson, in whom the title was vested, to deny that it has been thereby conveyed to appellee. He is therefore estopped from doing so. (Commonwealth *v.* Dudley, 10 Mass., 403, and cases before cited.) And certainly a stranger cannot make for him, or in his name, a

defense or claim which he has not made, and which he would not be permitted to make if he was a party to the suit.

We also think the evidence warrants the conclusion, that, on the sale of the land by Henderson to appellee, Stanley recognized appellee's title, and held under and in subordination to it, and was thereby estopped from disputing it. And as Mrs. Stanley can make no claim to the land as her homestead or otherwise, so far as can be seen from anything in the record, the estoppel against Stanley is equally as effectual against her.

It only need be said, in reply to the fifth assignment of error, that although the record shows that a motion for new trial was overruled, the motion is not in the transcript. The grounds of the motion not being shown, it is impossible for the court to say whether there was any error in the ruling or not.

There being no error in the judgment, it is affirmed.

AFFIRMED.